Ryan A. BEALL, Appellant–Defendant,

v.

MOORING TAX ASSET GROUP, Appellee–Plaintiff.

No. 45A05–0309–CV–450.

Court of Appeals of Indiana.

Aug. 17, 2004.

Ryan A. Beall, LaPorte, IN, Attorney for Appellant.

Kevin W. Marshall, Law Office of Smith and Marshall, Hammond, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Ryan Beall, appeals from the judgment awarded against him in an attorney malpractice claim brought by Appellee, Mooring Tax Asset Group ("Mooring"). Beall presents four issues for our review, which we restate as: (1) whether the evidence was sufficient to establish that an attorney-client relationship existed between himself and Mooring; (2) whether certain tax sale notices sent on behalf of Mooring were legally defective; (3) whether Mooring properly established that its damages were caused by Beall's negligence; and (4) whether the trial court properly denied Beall's motion to correct error.

We affirm.

The following are the facts most favorable to the trial court's judgment.[1] On

---

1. Beall's Appellant's Brief fails to recite the facts in light of the applicable standard of review. In fact, Beall's brief fails to cite to any standard of appellate review. *See* Ind.

September 18, 1997, Mooring purchased ten tax sale certificates for properties located in Lake County. On October 16, 1998, several notices of tax sale were sent to various parties regarding the ten properties purchased at the tax sale.[2] These notices purported to be prepared pursuant to Indiana Code § 6–1.1–25–4.5 ("Section 4.5"). Although Beall claims that these notices were drafted and sent by another party, the portions of the record he cites do not support this claim. Instead, the record reveals that all the notices contain the address of Beall's law office and are signed "Ryan A. Beall" as "Attorney for Purchaser."[3] Separate notices were published in the Crown Point Star newspaper on October 15, October 22, and October 29, 1998 regarding the properties. These notices contain Beall's name and telephone number. On July 14, 1999, appearance forms containing Beall's name were filed along with verified petitions for tax deeds on the properties. The verified petitions for tax deed start with the line, "Comes now Petitioner, MOORING TAX ASSET GROUP XXX, LLC, by their attorney, Ryan A. Beall, who being first duly sworn upon his oath, petitions the Court and states as follows:...." *See e.g.,* Plaintiff's Exhibit 1 at p. 9.[4] On July 16, 1999, Beall attended a hearing on the petitions for tax deed. Tax deeds were issued for all ten properties.

In June of 2000, an attorney representing John Falcone contacted Beall. Mr. Falcone was the owner of one of the properties at issue, specifically that located at 217 Porter Street. He wished to purchase it back. Beall informed Mooring of this contact. Approximately thirty days after this, Mr. Falcone filed a motion to set aside the tax deed. According to one of Mooring's witnesses, the tax deed was set aside due to problems with the notice. The tax deeds to two other properties, 1916 Grant Street and 569 Burr Street, were also set aside because of notice problems.

On May 8, 2001, Mooring filed suit against Beall alleging negligence in his handling of the post-tax sale notices. Beall answered the complaint on May 18, 2001. On October 28, 2002, a jury trial was held. The jury found Mooring's damages to be $19,865.55 and found that Beall was 75% at fault. The trial court entered judgment in the amount of $14,899.16.

On November 27, 2002, Beall filed a motion to correct error claiming newly discovered evidence. Specifically, Beall claimed that on June 20, July 9, and October 11, 2002, Mooring had sold three of the properties at issue, including the Grant Street property, the tax deed to which Mooring's witness claimed had been set aside. Beall also claimed that several of the properties were sold at a tax sale in

---

Appellate Rule 46(A)(6)(b) (statement of facts *shall* be stated in accordance with the standard of review appropriate to the judgment being appealed); Ind. Appellate Rule 46(A)(8)(b) (arguments must include for each issue a concise statement of the applicable standard of review).

2. Both parties agree in their briefs that these notices were sent on October 16, 1998, but the date on the notice letters themselves is October 5, 1998.

3. Beall admitted at trial that he signed at least two of the notices. All ten notices are substantially identical. Indeed, Beall admits in his brief that he "signed all notices and petitions but did not prepare or cause the notices to be served." Appellant's Brief at 4.

4. Oddly, the petitions are signed by an agent for Mooring, but are notarized and signed by Beall as a notary public. At trial, Beall argued that he was not responsible for the petitions, but upon appeal, he admits that he signed "all notices and petitions." Appellant's Br. at 4.

March 2000 because of Mooring's own failure to pay property taxes. Mooring's response to the motion to correct error did not deny Beall's claims that the properties had been sold, but instead noted the small amount of the jury award compared with what Mooring thought was a more proper amount of damages. Mooring's response also threatened that if the motion were granted, it would seek to have evidence regarding fifty more properties admitted. Following a hearing on Beall's motion, held on June 9, 2003, the trial court denied the motion on June 13, 2003.

The resolution of this case revolves in large part around Indiana's statutory scheme regarding tax sales. As explained by our Supreme Court in *Tax Certificate Investments, Inc. v. Smethers*, 714 N.E.2d 131, 133 (Ind.1999):

> "A purchaser of Indiana real property that is sold for delinquent taxes initially receives a certificate of sale. Ind.Code Ann. § 6–1.1–24–9 (West Supp.1998). A one-year redemption period ensues. Ind.Code Ann. § 6–1.1–25–1 (West 1998); Ind.Code Ann. § 6–11–25–4 (West Supp.1998). If the owners fail to redeem the property during that year, a purchaser who has complied with the statutory requirements is entitled to a tax deed. *Id.* The property owner and any person with a 'substantial property interest of public record' must each be given two notices. Ind.Code Ann. §§ 6–1.1–25–4.5, –4.6 (West Supp.1998).
>
> The first notice announces the fact of the sale, the date the redemption period will expire, and the date on or after which a tax deed petition will be filed. Ind.Code Ann. § 6–1.1–25–4.5 (West Supp.1998). The second notice announces that the purchaser has petitioned for a tax deed. Ind.Code Ann. § 6–1.1–25–4.6 (West Supp.1998)."

■ The elements of attorney malpractice are: (1) employment of an attorney which creates the duty; (2) the failure of the attorney to exercise ordinary skill and knowledge (the breach of the duty); and (3) that such negligence was the proximate cause (4) of damage to the plaintiff. *Rice v. Strunk*, 670 N.E.2d 1280, 1283–84 (Ind.1996). Upon review of a jury verdict, we will neither reweigh the evidence nor judge the credibility of witnesses, but will examine the evidence most favorable to the appellee and all reasonable inferences to be drawn therefrom. *Johnston v. Brown*, 468 N.E.2d 597, 601 (Ind.Ct.App. 1984).

■ Beall's first argument upon appeal is that there is insufficient evidence to establish the first element of the plaintiff's claim—that Mooring employed him. Beall's argument on this matter is brief and unpersuasive. He claims that Mooring hired another party, Great Lakes Certificate Management, and that Great Lakes in turn hired him only to appear at the hearing on the petitions for tax deed. Here, the alleged negligence relates to the timing of the Section 4.5 notices and the filing of the petitions for tax deed. Contrary to Beall's claims, the evidence favorable to the verdict reveals that he was responsible for both.

Beall's name, address, and telephone number appear on the Section 4.5 notices sent out. The Section 4.5 notices were also signed by Beall as "Attorney for Purchaser." It is indisputable that Mooring, not Great Lakes, was the purchaser of the properties in question. From this the jury could reasonably conclude that Beall sent out the Section 4.5 notices on behalf of Mooring. The jury was under no obligation to credit Beall's testimony to the contrary. The same is true with regard to the verified petitions for tax deed. As hereinbefore noted, they were brought in

Mooring's name by Beall as their attorney and purported to be "sworn upon his [Beall's] oath." Plaintiff's Exhibit 1, *supra.* Yet the petitions were signed by an individual, Verna J. Avery, as agent for Mooring. Beall's signature as Notary Public appears as part of the Notary's jurat and avers that on "this 1st day of July, 1999, personally appeared, (sic) Verna J. Avery and acknowledged the execution of the foregoing instrument." *Id.* Beall appeared at the hearing on the petitions on Mooring's behalf on July 16, 1999. From these facts, notwithstanding some curious internal inconsistencies, the jury could reasonably have concluded that Beall prepared and filed the petitions for tax deed on Mooring's behalf. In short, the evidence is sufficient to show that Beall was employed by Mooring with regard to the Section 4.5 notices and petitions for tax deed.

■ Beall also argues that, regardless of whether he was employed by Mooring, the post-tax sale notices were not legally defective and therefore there could be no breach of the duty to exercise ordinary skill and knowledge. At issue here are the Section 4.5 notices. At the relevant time, Section 4.5 read as follows:

"(a) A purchaser or an assignee is entitled to a tax deed to the property that was sold only if:

(1) the redemption period specified in section 4 of this chapter has expired;

(2) the property has not been redeemed; and

(3) not less than one (1) month, if the property is subject to section 4(a)(2), 4(a)(3), 4(a)(4), or 4(a)(5) of this

chapter,[5] *or otherwise not less than three (3) months or more than five (5) months prior to the filing of the petition for a tax deed but not more than thirty (30) days after the expiration of the period of redemption specified in section 4(a)(1) of this chapter:*

(A) *the purchaser or assignee;* or

(B) in a county having a consolidated city, a county having a population of more than two hundred thousand (200,000) but less than four hundred thousand (400,000),[6] or a county where the county auditor and county treasurer have an agreement under section 4.7 of this chapter, the county auditor;

*gives notice of the sale, the date of expiration of the period of redemption, and the date on or after which a petition for the tax deed will be filed to the owner and any person with a substantial property interest of public record in the tract or real property.* However, in a county having a consolidated city, the county auditor shall give notice not less than one (1) month before the expiration of the period of redemption (as specified in section 4(a)(3) of this chapter)." Ind.Code § 6–1.1–25–4.5 (Burns Code Ed. Repl.1998) (emphasis supplied).

Thus, the applicable portion of Section 4.5 requires that notice be sent by the purchaser not less than three months, but not more than five months, prior to the date the petition for tax deed is filed. The statute also sets an absolute deadline in that the notice must be sent within thirty

---

**5.** It does not appear, and neither party argues, that any of these subsections are applicable in the present case.

**6.** The compiler's notes in Burns Indiana Statutes Annotated state that, according to the

1990 federal census, the only county in Indiana having a consolidated city is Marion, and the only counties having populations between 200,000 and 400,000 were St. Joseph and Allen.

days after the end of the redemption period.

Here, the parties all agree that the redemption period was one year, that the tax sales occurred on September 18, 1997, that the Section 4.5 notices were sent on October 16, 1998, and that the petitions for tax deed were filed on July 14, 1999. Thus, the latest date the Section 4.5 notices could have been sent was one year and thirty days after the tax sale, i.e. October 18, 1998. Because the notices were sent out on October 16, 1998, Beall argues that the Section 4.5 notices were "post-marked prior to the one (1) year and thirty (30) days time period set forth in [Section 4.5]." Appellant's Br. at 5. Be that as it may, Section 4.5 contains other time requirements which were not followed in this case. Specifically, Section 4.5 requires that notice be sent not less than three months *but not more than five months* prior to July 14, 1999, the date the petitions for tax deed were filed. The Section 4.5 notices in the present case were sent over nine months prior to the filing of the tax deed, well outside the five-month limit contained in Section 4.5(a). In other words, the Section 4.5 notices were sent out too soon, or the petitions for tax deed were filed too late.

■ Despite the fact that the sending of the notices did not comport with Section 4.5, the trial court issued Mooring tax deeds to the properties. This creates a presumption that the tax sales and all of the steps leading to the issuance of the tax deeds were proper. *Shenvar v. Johnson*, 741 N.E.2d 1275, 1280 (Ind.Ct.App.2001), *trans. denied.* This presumption may be rebutted, however, by affirmative evidence to the contrary. *Id.* Title conveyed by a tax deed may be defeated if the notices

were not in substantial compliance with the manner prescribed in accordance with our notice statutes. *Id. See also* Ind.Code § 6–1.1–25–16(7) (Burns Code Ed. Repl. 1998). There was evidence in the present case that three of the ten tax deeds were eventually set aside due to defects in notice. Although Beall now complains that the only evidence of this was the "unsubstantiated" testimony of Mooring's witness John Gaither, Beall did not object to this testimony. Furthermore, Mr. Gaither testified that he owned a mortgage company and consulting firm and was the portfolio manager for Mooring with regard to the tax sales at issue. The jury could properly rely upon Mr. Gaither's testimony that three of the tax deeds were eventually set aside.

■ With regard to Beall's argument that Mooring failed to establish damages, we disagree. Mr. Gaither testified that Mooring expended $1,850 per property for noticing and quiet title actions. He also testified that Mooring spent approximately $22,000 in taxes on the properties.[7] Additionally, Mr. Gaither testified that Mooring had negotiated offers to sell for $50,000 two of the three properties for which the tax deeds were set aside. The jury's verdict totaled only $19,865.55. Although Beall is correct that Mooring presented no evidence that they had actually lost the tax deeds to the other seven properties, the evidence of damages regarding the three properties to which the tax deeds were set aside adequately support the jury's verdict.

■■ Beall's final argument is that the trial court improperly denied his motion to correct error. The grant or denial of a

---

**7.** It is not entirely clear from Mr. Gaither's testimony whether he is referring to the price Mooring paid at the tax sale or the subsequent property taxes due on the properties.

Our review of the evidence submitted at trial reveals that Mooring paid in $33,556.41 at the tax sale for the ten properties.

motion to correct error is within broad discretion of the trial court, and we will reverse only upon an abuse of that discretion, i.e., when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Childress v. Buckler,* 779 N.E.2d 546, 550 (Ind.Ct.App. 2002). Beall's motion was based upon evidence which he claimed was "newly discovered." Indiana Trial Rule 59(A)(1) requires a motion to correct error to be filed when a party seeks to address "[n]ewly discovered material evidence, including alleged juror misconduct, capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial ...." Furthermore, Trial Rule 59(H)(1) states that a motion to correct error based upon evidence outside the record "*shall* be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." (emphasis supplied). The record before us gives no indication that Beall's motion, which is based upon evidence outside the record, was supported by affidavit. For this reason alone, we cannot say that the trial court improperly denied Beall's motion. *See Dowell v. Fleetwood,* 420 N.E.2d 1356, 1360 (Ind.Ct. App.1981) (where motion to correct error based upon evidence outside the record was not supported by affidavit showing truth of the matter asserted, alleged error was not reviewable upon appeal); *Carter v. State,* 512 N.E.2d 158, 173 (Ind.1987) (where defendant failed to enter alleged newly discovered evidence into the record by means of affidavit, no facts existed in the record to support argument of newly discovered evidence).

Moreover, Beall's motion fails to explain why the evidence mentioned in his motion could not have been discovered with due diligence and produced at trial. At the hearing on the motion, Beall did claim that, "due to the proximity in time that these properties were sold to the trial there is no way that I could have discovered this information in time to present it to the Court." Tr. at 158. Beall claims that three of Mooring's properties were eventually sold, specifically claiming that the property on Grant Street was sold on June 20, 2002, that the property on Pennsylvania Street was sold on July 9, 2002, and that the property on Virginia Street was sold on October 11, 2002. Accepting the dates of sale as true, we observe that the Grant Street property was sold over eighteen weeks before the trial and the Pennsylvania Street property was sold over fifteen weeks prior to trial. Given this amount of time, the trial court could have properly denied Beall's motion because the evidence could have been discovered with due diligence prior to trial. Furthermore, even if all three of these properties had been sold, the evidence of damages regarding the remaining properties was sufficient to support the jury's verdict. Beall has failed to demonstrate that the trial court abused its discretion in denying his motion to correct error.

The judgment of the trial court is affirmed.

MAY, J., and VAIDIK, J., concur.